# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 27, 2012

Lyle W. Cayce
Clerk

No. 11-60051

DERRICK BROWN, also known as Derrick Latory Brown,

Petitioner - Appellee

v.

CHRISTOPHER B. EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS; ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI,

Respondents - Appellants

Appeal from the United States District Court
for the Northern District of Mississippi

Before HIGGINBOTHAM, GARZA, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A government informant set up a controlled drug deal with two unidentified men. Their conversations were recorded and admitted into evidence at the petitioner's trial in state court. He was convicted. The Mississippi Supreme Court upheld the conviction, concluding that the conversations were not hearsay and did not violate the petitioner's rights under the Confrontation Clause. Subsequently, the petitioner successfully pursued collateral relief in federal district court. We hold that the unidentified men's recorded statements were not testimonial, and therefore their admission did not violate the Confrontation Clause. We reverse.

No. 11-60051

## I.

On November 3, 2003, Antonio Echols, a confidential informant, contacted the Panola County Narcotics Task Force ("Task Force") Commander about buying crack cocaine from Elmer "Little Fudge" Armstrong.  Echols had already spoken with Armstrong, who had put him on a three-way conference call with two unidentified individuals.  The drug deal was to take place at the Wal-Mart in Senatobia, Mississippi.

At the Commander's direction, Echols went to the Task Force office and called the unidentified individuals to finalize the drug deal.  The call was recorded.  The unidentified individuals told Echols that they had only two ounces of crack cocaine to sell, which Echols agreed to buy.  Echols was then searched, wired, given $1,600 to use in the controlled buy, and dropped off at the Wal-Mart.  Echols waited in the Wal-Mart parking lot for approximately two hours.  While waiting, he made four phone calls to the unidentified individuals to inquire as to their whereabouts, to decide how specifically they should meet, and to specify what form of cocaine he wanted to purchase.  Although the unidentified individuals initially told Echols that they were coming in a blue Monte Carlo, that changed to a white Delta 88.  The Task Force recorded the phone conversations through Echols's body wire.

Law enforcement officers providing surveillance and security for the controlled buy observed a white Delta 88 make its way to the Wal-Mart parking lot. The petitioner, Derrick Brown, was the driver.  Echols got into the back seat of the car and handed the passenger, Derrick Black, $1,600 in exchange for a plastic baggie.  Law enforcement officers descended on the car and arrested Brown and Black.  The Mississippi Crime Laboratory confirmed that the plastic baggie contained 1.53 ounces of crack cocaine.

In subsequent proceedings, neither Echols nor any of the law enforcement officers identified the individuals with whom Echols spoke on the phone.  The audiotape recordings and transcripts of Echols's phone conversations were

2

admitted into evidence at Brown's trial in Mississippi state court with that caveat. Ultimately, a jury found Brown guilty of the sale of cocaine as an aider and abettor.

On direct appeal, Brown argued that the recordings and transcripts of Echols's phone conversations prior to the drug deal constituted hearsay and that the trial court's erroneous admission of this evidence prejudiced his defense and violated his federal and state constitutional rights to confront adverse witnesses.[1] The intermediate appeals court concluded that the taped phone conversations constituted hearsay and that admitting them substantially prejudiced Brown, justifying a new trial.[2] It did not reach the question of whether admitting the taped phone conversations violated Brown's federal and state rights of confrontation.[3]

The Mississippi Supreme Court reversed, reinstating the trial court's judgment.[4] It held that the unidentified individuals' statements in the taped phone conversations did not constitute hearsay under state law because they were not offered to prove the truth of the matter asserted.[5] It also held that the trial court's admission of the taped phone conversations did not violate Brown's federal and state constitutional rights to confront and cross-examine adverse witnesses.[6]

After an unsuccessful attempt at state habeas alleging ineffective assistance of counsel and insufficiency of the evidence, Brown filed the instant

---

[1] *Brown v. State*, 969 So. 2d 891, 892, 894, 897 (Miss. Ct. App. 2007), *rev'd*, 969 So. 2d 855 (Miss. 2007) (en banc).

[2] *Id.* at 898-99.

[3] *Id.* at 899.

[4] *Brown*, 969 So. 2d at 857.

[5] *Id.* at 861-62.

[6] *Id.* at 862-64.

§ 2254 petition arguing again that the evidence was insufficient to support his conviction and also that the trial court's admission of the taped phone conversations violated his Sixth Amendment rights of confrontation and cross-examination. The district court rejected Brown's claim that the evidence was insufficient to support his conviction,[7] but it found Brown's Confrontation Clause argument persuasive.[8] The district court determined that the taped phone conversations were "clearly hearsay" and "clearly testimonial" because they were presented to prove the "gist" of the conversations and to corroborate various witnesses' testimony, and also because Brown was denied an opportunity to confront and cross-examine the unidentified individuals on the recordings.[9] As a result, the district court granted Brown's § 2254 petition in part, vacated the state trial court's judgment, and ordered that Brown be released from custody, including probation, unless the State were to initiate a new trial within 120 days.[10] The State filed a timely notice of appeal, and the district court granted a stay of its judgment pending appeal.[11]

## II.

In an appeal from a district court's grant of habeas relief, we review issues of law de novo and factual findings for clear error.[12] Mixed questions of law and

---

[7] *Brown v. Epps*, 758 F. Supp. 2d 347, 354-56 (N.D. Miss. 2010). Brown does not appeal the sufficiency ruling.

[8] *Id.* at 356-61.

[9] *Id.* at 357-58.

[10] *Id.* at 361-62. Brown was initially sentenced to 15 years in prison, with 6 years suspended pending his future good behavior. He was released on parole on February 12, 2009, and remains under the supervision of the Mississippi Department of Corrections until his sentence expires on October 18, 2015.

[11] A certificate of appealability is not required because a representative of Mississippi is appealing the district court's grant of habeas relief. *See* FED. R. APP. P. 22(b)(3); *DiLosa v. Cain*, 279 F.3d 259, 262 n.1 (5th Cir. 2002).

[12] *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008).

fact, such as whether a defendant's Confrontation Clause rights were violated, are reviewed de novo "by independently applying the law to the facts found by the district court, as long as the district court's factual findings are not clearly erroneous."[13]

A federal court may not grant a petitioner habeas relief on a claim that was adjudicated on the merits by the state court unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[14] The state court's factual findings are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence.[15]

"'A state court's decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases,' or if the state court 'decide[s] a case differently than the United States Supreme Court previously decided a case on a set of nearly identical facts.'"[16] A state court's decision is an unreasonable application of clearly established federal law "if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'"[17] An unreasonable application of clearly established federal law "is different from a merely incorrect or erroneous application; the state court decision must be an objectively

---

[13] *Id.*

[14] 28 U.S.C. § 2254(d). Section 2254(d)(2) is not implicated here.

[15] *Id.* § 2254(e)(1).

[16] *Jones v. Cain*, 600 F.3d 527, 535 (5th Cir. 2010) (alteration in original) (citations omitted) (quoting *Fields v. Thaler*, 588 F.3d 270, 273 (5th Cir. 2009), and *Taylor v. Cain*, 545 F.3d 327, 334 (5th Cir. 2008)).

[17] *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (quoting *Penry v. Johnson*, 532 U.S. 782, 792 (2001)).

unreasonable application."[18]  To obtain relief under § 2254, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[19]

## III.

The only question before us is whether the unidentified individuals' statements in the recorded conversations setting up the drug deal are testimonial under the Supreme Court's Confrontation Clause jurisprudence.[20] The Confrontation Clause of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

---

[18] *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009).

[19] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

[20] The scope of our review bears some explanation, as there are several issues in this case we need not address. *First*, we do not decide whether the statements were hearsay. Only testimonial hearsay implicates the Confrontation Clause. *Davis v. Washington*, 547 U.S. 813, 823-24 (2006). We conclude that the statements here were nontestimonial, so there is no need for us to decide whether they were hearsay.

*Second*, we need not decide whether a confidential informant's actions are essentially actions of the police for purposes of Confrontation Clause analysis. *Cf. Davis*, 547 U.S. at 823 n.2 (assuming without deciding that the actions of 911 operators are "acts of the police"). The answer to that question does not affect our conclusion that the statements here were nontestimonial.

*Third*, Brown does not argue that admitting the conversations was so fundamentally unfair that it violated his constitutional due process rights, and so we do not address that question. *See Pemberton v. Collins*, 991 F.2d 1218, 1226 (5th Cir. 1993) ("A state court's evidentiary ruling presents a cognizable habeas claim only if it runs afoul of a specific constitutional right or renders the trial fundamentally unfair."); *cf. Montana v. Egelhoff*, 518 U.S. 37, 53 (1996) (plurality opinion) ("[E]rroneous evidentiary rulings can, in combination, rise to the level of a due process violation."); *Duton v. Evans*, 400 U.S. 74, 96-97 (1970) (Harlan, J., concurring in result) ("[T]he Fifth and Fourteenth Amendments' commands that federal and state trials, respectively, must be conducted in accordance with due process of law" are the "standard[s]" by which to "test federal and state rules of evidence.").

*Finally*, see *infra* note 37 explaining why our focus is on the unidentified individuals' statements rather than Echols's.

witnesses against him."[21] In *Crawford v. Washington*,[22] the Supreme Court held that this right is violated when the prosecution introduces "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."[23] Because *Crawford* was decided prior to Brown's 2005 trial, its rule applies.[24]

Only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."[25] "[A] statement that is not testimonial cannot violate the Confrontation Clause."[26] The *Crawford* Court described a testimonial statement as "'[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,'"[27] a description which includes "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'"[28] The Court declined "to spell out a comprehensive definition of 'testimonial'" but noted that "at a minimum" it includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and

---

[21] U.S. CONST. amend. VI.

[22] 541 U.S. 36 (2004).

[23] *Id.* at 53-54.

[24] *Cf. Fratta*, 536 F.3d at 490 (citing *Whorton v. Bockting*, 549 U.S. 406 (2007)) (holding that *Crawford* does not apply retroactively to cases whose direct appeal became final before *Crawford* was decided).

[25] *Davis*, 547 U.S. at 821.

[26] *United States v. Vasquez*, 234 F. App'x 310, 313 (5th Cir. 2007) (unpublished) (per curiam); *accord Davis*, 547 U.S. at 823-24 (answering the question "whether the Confrontation Clause applies only to testimonial hearsay" in the affirmative because "[a] limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its 'core,' but its perimeter").

[27] 541 U.S. at 51 (alteration in original) (quoting 2 NOAH WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828)).

[28] *Id.* at 52 (quoting Brief for National Ass'n of Criminal Defense Lawyers et al. as Amici Curiae at 3, *Crawford*, 541 U.S. 36 (No. 02-9410)).

. . . police interrogations."[29]  The Court subsequently clarified that a statement is not testimonial if it is procured for the primary purpose of allowing police to assist in an ongoing emergency or if it is procured under other circumstances where the primary purpose is not to create an out-of-court substitute for trial testimony.[30]  In determining whether such circumstances exist, courts consider whether the individual "was speaking about events *as they were actually happening*, rather than 'describ[ing] past events'"; whether the statements enabled police to resolve an ongoing emergency; and whether the statements were made in a formal setting.[31]  The Court has emphasized that "[a]n objective analysis of the circumstances of an encounter and the statements and actions of the parties to it provides the most accurate assessment of the 'primary purpose of the interrogation.'"[32]

No controlling authority specifies whether an unidentified declarant's statements to an undercover officer or confidential informant prior to an arrest are testimonial, but persuasive authorities all point in the same direction.  In *Davis*, the Supreme Court observed in dicta that statements made unwittingly to a government informant were "clearly nontestimonial."[33]  In an unpublished decision, *United States v. Vasquez*, this Court relied on the Supreme Court's observation in *Davis* to conclude that an unindicted coconspirator's statements made unwittingly to an undercover officer were not testimonial because there was nothing in the record to suggest that the coconspirator was aware that his

---

[29] *Id.* at 68.

[30] *See Michigan v. Bryant*, 131 S. Ct. 1143, 1155 (2011) (citing *Davis*, 547 U.S. at 822).

[31] *Davis*, 547 U.S. at 827 (alteration in original) (quoting *Lilly v. Virginia*, 527 U.S. 116, 137 (1999) (plurality opinion)); *see id.* at 826-28.

[32] *Bryant*, 131 S. Ct. at 1156; *see also Williams v. Illinois*, No. 10-8505, slip op. at 31 (U.S. June 18, 2012) (plurality opinion) (discussing the objective "primary purpose" test).

[33] 547 U.S. at 825 (citing *Bourjaily v. United States*, 483 U.S. 171, 181-84 (1987)). *Crawford* also cites *Bourjaily* with some approval.  541 U.S. at 58.

conversations were being recorded.[34] Likewise, relying on *Crawford*, *Davis*, and *Vasquez*, several district courts in this Circuit have held that statements unknowingly made to an undercover officer, confidential informant, or cooperating witness are not testimonial in nature because the statements "are not made under circumstances which would lead an objective witness to reasonably believe that the statements would be available for later use at trial."[35] Many other Circuits have come to the same conclusion, and none disagree.[36] In sum, courts that have addressed similar questions would probably agree that the phone conversations in this case were nontestimonial.[37]

---

[34] 234 F. App'x at 314.

[35] *United States v. Brown*, No. 10-100-BAJ-SCR, 2011 WL 576901, at *5 (M.D. La. Feb. 9, 2011); *see also United States v. Gilmore*, No. 10-00200-02, 2012 WL 1577242, at *1 (W.D. La. May 3, 2012); *United States v. Ngari*, No. 10-60-JJB, 2011 WL 5196538, at *7 (M.D. La. Oct. 31, 2011); *United States v. Stevens*, 778 F. Supp. 2d 683, 691 (W.D. La. 2011); *Laurent v. Tanner*, No. 10-1175, 2010 WL 5141871, at *19-20 (E.D. La. Nov. 4, 2010) (magistrate judge's report and recommendation), *approved and adopted*, 2010 WL 5151613 (E.D. La. Dec. 8, 2010).

[36] *See United States v. Dale*, 614 F.3d 942, 956 (8th Cir. 2010); *United States v. Smalls*, 605 F.3d 765, 778 (10th Cir. 2010); *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009); *United States v. Watson*, 525 F.3d 583, 589 (7th Cir. 2008); *United States v. Udeozor*, 515 F.3d 260, 269-70 (4th Cir. 2008); *United States v. Underwood*, 446 F.3d 1340, 1347-48 (11th Cir. 2006); *United States v. Hendricks*, 395 F.3d 173, 182-84 (3d Cir. 2005); *United States v. Saget*, 377 F.3d 223, 229-30 (2d Cir. 2004).

[37] In determining whether statements in a recorded conversation involving a confidential informant are testimonial, some courts have drawn a distinction between the informant's statements and the unwitting target's statements. *Compare, e.g.*, *United States v. Gaytan*, 649 F.3d 573, 579 (7th Cir. 2011) (finding an informant's recorded statements setting up a drug bust to be testimonial), *with United States v. Tolliver*, 454 F.3d 660, 665 (7th Cir. 2006) (finding the taped statements of a sting operation's target to be nontestimonial). *See generally Hendricks*, 395 F.3d at 182 & n.9 (finding "some appeal" in treating a confidential informant's statements as testimonial). In this case, Brown's focus is on the unidentified individuals rather than Echols, as Echols appeared as a witness at trial. Accordingly, we need not address the distinction. We note, however, that even if Echols had not appeared at trial, his statements might have been admissible to put the unidentified individuals' statements into context and to make them intelligible to the jury. *See Gaytan*, 649 F.3d at 579-80; *United States v. Moore*, 365 F. App'x 800, 802 (9th Cir. 2010) (unpublished memorandum opinion); *Tolliver*, 454 F.3d at 666; *Hendricks*, 395 F.3d at 184.

That is no coincidence: the convergence results from the straightforward application of *Crawford* and its progeny.  Even if the Supreme Court has not comprehensively demarcated "testimonial statements," every indicator that the Court has ascribed to them do not apply to the statements at issue here.  The conversations did not consist of solemn declarations made for the purpose of establishing some fact.[38]  Rather, the exchange was casual, often profane, and served the purpose of selling cocaine.  Nor were the unidentified individuals' statements made under circumstances that would lead an objective witness reasonably to believe that they would be available for use at a later trial.[39]  To the contrary, the statements were furthering a criminal enterprise; a future trial was the last thing the declarants were anticipating.  Moreover, they were unaware that their conversations were being preserved, so they could not have predicted that their statements might subsequently become "available" at trial.[40] The unidentified individuals' statements were obviously not "prior testimony at a preliminary hearing, before a grand jury, or at a former trial."[41]  They also were not part of a formal interrogation about past events—the conversations were informal cell-phone exchanges about future plans—and their primary purpose was not to create an out-of-court substitute for trial testimony.[42] Applying to this case an image from Justice Scalia's majority opinion in *Davis*, "[n]o 'witness' goes into court to proclaim" that he will sell you crack cocaine in

---

[38] *See Crawford*, 541 U.S. at 51.

[39] *See id.* at 52.

[40] *See Watson*, 525 F.3d at 589; *Tolliver*, 454 F.3d at 665; *Underwood*, 446 F.3d at 1347 ("Had [the defendant] known that [the confidential informant] was a confidential informant, it is clear that he never would have spoken to her in the first place.").

[41] *Crawford*, 541 U.S. at 68.

[42] *See Davis*, 547 U.S. at 822, 826-27; *see also Bryant*, 131 S. Ct. at 1155.

a Wal-Mart parking lot.[43]  An "objective analysis" would conclude that the "primary purpose" of the unidentified individuals' statements was to arrange the drug deal.[44]  Their purpose was "not to create a record for trial and thus is not within the scope of the [Confrontation] Clause."[45]  We conclude that the statements were nontestimonial.

Because we so conclude, it is apparent that the Mississippi Supreme Court's Sixth Amendment ruling was not "contrary to" or "an unreasonable application of clearly established Federal law, as determined by the Supreme Court."[46]  Brown has established no basis for granting federal habeas relief.

## IV.

The judgment of the district court is REVERSED.

---

[43] *Davis*, 547 U.S. at 828.

[44] *Bryant*, 131 S. Ct. at 1156-57.

[45] *Id.* at 1155.

[46] 28 U.S.C. 2254(d)(1).